## NOLAND v. WICKHAM.

1. To entitle a poor debtor to the benefit of the act which declares, "one work horse," &c. shall be retained for the use of every family in this State, "free and exempt from levy or sale, by virtue of any execution or other legal process," it is not necessary to prove that the horse had been broke to gear, or used in harness; but it is enough if he performed the common drudgery of the homestead, either by hauling wood, drawing the plow, carrying the family to church, &c., under the saddle or in traces. And he need not have performed all these services; if he is intended to be used in any or all of them, or in others of a kindred character, he comes within the exemption.

2 *Quere?* May not a debtor, with a family, in this State, who has but two "work horses," elect which he will retain as exempt from an "execution, or other legal process."

Writ of Error to the Circuit Court of Limestone.

THIS was an action of trover, at the suit of the defendant in error, for the conversion of a horse. The defendant pleaded not guilty, and justification, and issue was thereupon joined, with leave to give any special matter in evidence; a verdict was returned for the plaintiff, for $54 90, and judgment was rendered accordingly.

On the trial, a bill of exceptions was sealed, at the instance of the defendant, from which it appears, that the plaintiff was the head of a family, residing in this State, that the horse in controversy, and another small filly, upwards of two years old, broke to the saddle, but not to gear, were all the horses he had; besides which he had neither a mule nor a pair of work oxen. *Further*, that the defendant took the horse from the plaintiff's possession and sold him. It was proved, on the part of the defendant, that he was, at the time of the levy and sale, a constable, and then had an execution in his hands for something more than $40; and in virtue thereof, seized and sold the horse in question.

It was then shown, on the part of the plaintiff, that he claimed the horse under the statute, and directed the defend-

22

ant to levy on the filly, the latter refused to do so. The
horse was worth about forty-five dollars. There was much
conflicting testimony as to the fact, whether the horse was
broke to gear at the time of the levy. Plaintiff's witnesses
stated that a few days after the levy, he was worked in the
wagon for half a day, and defendant's witnesses testified, that
in the spring, after the levy, he was hard to work in a plow
—requiring two or three persons to manage him at starting.
The value of the filly was not shown.

The court charged the jury, that it was not important
whether the horse was broke to gear; if he was the only horse
of the plaintiff, and was kept, or intended, for some ordinary
kind of service or labor, even if that was riding only, he was
a work horse within the meaning of the statute, and as such,
could not have been levied on and sold, if the plaintiff was
the head of a family. *Further*, that as between the horse
and the filly, the plaintiff had the right to elect; and if, at
the time of the levy, the plaintiff claimed the horse under the
statute, and directed the defendant to levy on the filly, the
latter should have surrendered the horse.

J. W. McCLUNG, for the plaintiff in error, insisted, that the
construction given to the statute, which secures to a judgment
debtor a right to retain a portion of his property, for the ben-
efit of his family, is not supported, either by the letter or
spirit of the act.

E. J. JONES, for the defendant in error. The statute in
question, is beneficial, was intended to relieve the *poor* debt-
or, and should be liberally expounded. By the term "work
horse," we must understand one kept for labor or service,
whether under the saddle, in the plough, &c If this con-
struction be not allowed, then the only horse of a constable,
sheriff, physician, mail carrier, &c. might be levied on and
sold, merely because he was used for the saddle only, and
had never been broke to the plough, or harness. The fami-
ly would suffer just as much in such case, as if its head made
a livelyhood by tilling the soil. But the proof showed that
the horse worked *in gear*, and even if the court gave to the

statute too extensive a meaning, the defendant was not prejudiced, and this court will not reverse the judgment.

The words of the statute are, "work horse, mule or pair of oxen." Now. all mules are intended for labor, hence the word "work" is not prefixed to this designation in the statute; but all horses are not work horses; some are intended for breeding, some for the turf, and others for labor. This latter class were all intended to be embraced by the statute, wherever the service performed is such as is ordinary and usual.

The statute gives a benefit to the defendant in execution, and unless he claims it, the officer is not bound to leave any of his property. If the defendant must assert right to the property exempted from execution, he must have the right to elect between several articles, of which he was entitled to retain one.

COLLIER, C. J.—Among other things, it is enacted, that "one. work horse, mule, or pair of oxen," "shall be retained by, and for the use of, every family in this State, free and exempt from levy or sale, by virtue of any execution, or other legal process." [Clay's Dig.] The only point which we remember to have decided under this statute, is, that the exemption does not cover the property of one who has a family in another State, although he is here accompanied by a son, not shown to be dependent upon him. [Allen v. Manasse & Mosely, 4 Ala. Rep. 554.]

It is not controverted in the present case, that the plaintiff had a family residing with him in this State, but to exempt a horse from liability to seizure and sale, under execution, it is insisted, he must, within the meaning of the act cited, have been broke to gear; or in other words, should be a draught horse, and have been used for that purpose. This construction, we think, is entirely too restricted. The statute was doubtless intended for the benevolent purpose of enabling the head of a family to support, and at the same time contribute to the comfort and convenience of, those of his own household who are dependent upon him. To give to it the scope and operation contemplated by the legislature, it will not do to limit the exemption to a horse that has actual-

Noland v. Wickham.

ly performed service in a plow, or cart; but we must understand the terms "work horse" to mean, one that performs the common drudgery of the homestead; as to haul wood, to draw the plow, to carry the family to church, &c., either under the saddle or in traces. It is not necessary that he shall have performed this service; if he has performed a part of it, and is intended as such a drudge, it is quite sufficient to bring him within the exemption of the statute. If the law were otherwise, then a horse purchased for the purpose of being used in traces, or harness, whenever the family required it, if he had not been broke to these, would be subject to levy and sale, though he had performed important service under the saddle, for the family. And this too, when it is known that the docility of the horse is in general such, that there are but few that cannot be induced to draw kindly.

It might so happen, that no member of the family, either from bad health or other cause, were able to drive a plow or cart; yet, if the only horse belonging to its head was used to ride to mill, to carry the children to school, and in other equally necessary or convenient service, surely it would not be insisted, that he was subject to execution because he had never drawn in traces or shafts. We cannot think, the Circuit Judge misapprehended the law, in instructing the jury as he did in the first charge excepted to.

We incline to the opinion, that as the statute does not prescribe who shall elect which horse a defendant in execution shall retain where he has several, the right of election, if he claims it, devolves upon him. But does the evidence in the case before us, show that the plaintiff had more than one "work horse," according to the interpretation we have given to those terms? The horse left, was "a small filly, the rise of two years old, broke to the saddle;" thus making the inference legitimate, that she had not been employed in doing the ordinary service of the family. It results from this view, that the second charge is also defensible. The judgment is consequently affirmed.