## ALLMAN vs. GANN.

[DETINUE FOR HORSE BY DEFENDANT IN EXECUTION AGAINST PURCHASER AT SHERIFF'S SALE.]

1. *Exemption law (Code, § 2462) construed, as to meaning of term 'work-horse.'*—A stallion may be exempt from levy and sale under execution, if one of the purposes for which he is kept is the use of the family in the performance of the ordinary services of a work-horse, although he is sometimes used for other purposes ; but the use is a question of fact for the decision of the jury, which the evidence in this case did not authorize the court to assume.— (RICE, C. J., *dissenting*, held that the evidence justified a general charge in favor of the claimant without hypothesis.)

2. *General charge on evidence.*—A general charge in favor of either party is erroneous, when there is the least conflict in the evidence on a material point, or where the evidence is susceptible of more than one construction, although the facts of the case are admitted by the parties, and the bill of exceptions states that there was no conflict in the evidence.

APPEAL from the Circuit Court of Marion.
Tried before the Hon. THOMAS A. WALKER.

THIS action was brought by Samuel Gann against W. C. M. Allman, to recover a stallion, together with damages for its detention ; and the bill of exceptions is as follows :—

" On the trial of this cause, it was admitted by the defendant, that the plaintiff owned the horse sued for at the time of the levy and sale under the execution under which the defendant claims, and that he has not since parted with his title, except by virtue of said sale ; that the plaintiff, at, before, and since said levy and sale, was a man of family, a citizen of, and residing in this State, and had a wife and two children ; that he then owned but one horse, and no mule or yoke of work-oxen, and the horse sued for in this action is the one *in controversy;* that the plaintiff claims said horse as his work-horse, under the statute exempting certain property from levy and sale under legal process, and claimed said horse at the time of said levy and sale, and forbid the sale ; that said horse was claimed and used by plaintiff in the ordinary and common services of his family in this State, so far as he had such services to perform—that is, he once rode to mill on him, and once carried his wife to church, but plaintiff had to lead him when she rode him to church ; that said horse was broke to the saddle, and plaintiff used him as his saddle-horse, both in this State and in Mississippi, before and after the time of said levy ; that said horse was, and is, worth $300 ; that he was in the defendant's possession at the service of the writ in this case, and has been in his possession for the twelve months since said sale ; that his annual use is worth $50 ; that plaintiff was married, in this State, in 1850, and has ever since resided here ; that he and his family lived together at the time of said levy and sale, and are still residing together in this State ; that he never stood said horse, or let him to mares, in this State, but only used him here in the ordinary services of his family as above stated. It is admitted by the plaintiff, that said horse was levied on and sold by a constable under regular process of law, and that the defendant purchased said horse, *bona fide*, at public sale under execution against plaintiff. It is further admitted, that plaintiff purchased said horse from a Tennessean, for $300, (giving two other horses in part payment, and paying the balance in money,) in the winter of 1853–4 ; that he carried said horse to Mississippi, in the spring of 1854, and stood him, and said that he made $400 by him in the season ; and that a short time after he returned to this State, the horse was levied on, and sold.

"There being no conflict in the proof, the court thereupon charged the jury, that if they believed the evidence, they must find for the plaintiff; to which charge the defendant excepted," and which he now assigns as error.

E. W. PECK, for the appellant.

THOS. M. PETERS, *contra.*

STONE, J.—The statute, exempting from levy and sale certain property for the benefit of indigent families, has always received in this court a liberal construction, in furtherance of the humane intentions of the legislature.—Code, § 2462 ; Watson v. Simpson, 5 Ala. 233 ; Jordan v. Autrey, 10 Ala. 276 ; Favers v. Glass, 22 Ala. 627 ; Sallee v. Waters, 17 Ala. 482 ; Noland v. Wickham, 9 Ala. 169. We have no wish to depart from such construction.

The question raised by this record is, was the horse described in the testimony, a *work-horse* within the meaning of the statute ? The bill of exceptions tends to show that he was put to various uses ; to some of which we are unable to assign a place within the purview of the statute.

In Noland v. Wickham, *supra,* this court said, " We must understand the term *work-horse* to mean one that performs the common drudgery of the homestead ; as to haul wood, to draw the plow, to carry the family to the church, &c., either under the saddle, or in traces. It is not necessary that he shall have performed this service; if he has performed a part of it, and is intended as such a drudge, it is quite sufficient to bring him within the exemption of the statute." In another part of the same opinion, it is more than intimated that the statutory exemption would be upheld for the benefit of the family, "if the only horse belonging to its head was used to ride to mill, to carry the children to school, or in other equally necessary or convenient service." It is not necessary that the horse should have been broken to the harness, or actually put to service.—9 Ala. 169.

We cordially approve this statement of the principle. The inquiry in every such case is, what is the intention or purpose for which the horse is owned and kept ? If the horse was kept in the prosecution of a *business,* or *livelihood,* outside of

the comforts, the wants and requirements of the family, and of its several members, then such horse is not exempt under the statute from levy and sale.

On the other hand, if owned and kept for the use of the family, the exemption is not impaired if the horse be, for any portion of the time, applied to other uses. The *use* is a question of inference to be drawn by the jury, upon a survey of all the evidence. We do not say, or intend to say, that the statute withholds its protection, unless the *chief* or *main* employment of the horse shall be in the service of the family. In fact, it is not necessary that any service shall have been rendered the family, if there be a *bona-fide* intention that the horse shall be put to such use. We do decide, however, that to justify the exemption, *use* by, or *service* to the family, in the sense of that term as we have above explained it, must be one of the *bona-fide* purposes for which the property is kept.

It is obvious, the legislature did not intend to exempt every description of horse, irrespective of the uses to which he was put. If such had been their intention, they would have omitted the word *work*, as a qualification of the term *horse.*

The testimony in this case was susceptible of more than one construction. It should, therefore, have been left to the jury, under an appropriate charge. It was not, on the main point, so free from conflict, as to justify the charge given.—Arnold v. The State, at the present term ; Dill v. The State, 25 Ala. 16 ; Holmes v. The State, 23 Ala. 17; Skains & Lewis v. The State, 21 Ala. 218.

For the error pointed out, the judgment of the circuit court is reversed, and the cause remanded.

RICE, C. J.—I think the construction given to the exemption law, by our former decisions, both before and since its re-enactment in the Code, was more liberal than that given to it by my brother judges in this case. I am not willing to narrow the construction heretofore given to this law.—See Favers v. Glass, 22 Ala. R. 621, and cases therein cited. And according to the former decisions of this court, the charge of the court below was, in my judgment, correct. I am, therefore, opposed to a reversal.