# McGuire *v.* Van Pelt *et al.*

*Bill in Equity for Cancellation of Mortgage, or Redemption.*

1. *General demurrer.*—"That there is no equity in the bill," is only a general demurrer, which, being prohibited by statute (Revised Code, § 3350), can not be considered for any purpose.
2. *Usury; who may plead.*—Usury is a defense personal to the parties to the contract, or their legal representatives, and cannot be set up by an assignee of the mortgagor, when seeking a redemption.

VOL. LV.

[McGuire v. Van Pelt et al.]

3. *Assignment of mortgage and secured debt; substitution of new note.*—When a mortgage and the debt secured by it are assigned, the acceptance by the assignee of a new note from the debtor, while it discharges the mortgagee as the assignor of the old note, in the absence of an agreement to the contrary, does not extinguish the debt, nor impair the mortgage as security for it.

4. *Tender, as pre-requisite to bill to redeem.*—In a bill to redeem, filed by the mortgagor or his assignee, an averment of a tender before filing the bill is only material as affecting the question of costs, and is not essential to the equity of the bill. (Explaining and limiting *Daughdrill v. Sweeney*, 41 Ala. 310.)

5. *Power of sale in mortgage, and effect of sale under it.*—A power of sale, contained in a mortgage, is a power coupled with an interest, is irrevocable, appendant to the land, and passes by an assignment of the mortgage and secured debt; and a sale under the power by the assignee, no unfairness or oppression being averred, cuts off the equity of redemption.

6. *Homestead exemption; alienation by husband alone, with other lands.*—A conveyance of an entire tract of land, embracing the homestead, by the husband alone, though void as to the homestead, is valid as to the other lands.

7. *Homestead exemption in lands held by tenants in common.*—The right of homestead exemption, as secured by the constitution, attaches to lands owned and occupied by tenants in common; and where two tenants in common, owning a tract of land on which there is but one dwelling-house, and occupying it as their homestead, convey it by deed of trust for the benefit of their creditors, their wives properly joining in the conveyance, the entire homestead right, to the extent of eighty acres including the dwelling-house, passes by the conveyance, as against a purchaser under a prior mortgage of the entire tract, in which the wives did not join. (BRICKELL, C. J., *dissenting.*)

8. *When equity will allot homestead.*—The trustee in a deed of trust for the benefit of creditors, which conveys the debtor's homestead exemption, with other lands, may maintain a bill in equity against a purchaser of the lands under a prior mortgage, which was inoperative as an alienation of the homestead, to have the homestead set apart, by commissioners appointed by the court, the debtor himself not having exercised his right of selection, and the homestead never having been set apart to him.

APPEAL from the Chancery Court of Dallas.

Heard before the Hon. CHARLES TURNER.

The bill in this case was filed on the 20th September, 1873, by John McGuire, against Herman Van Pelt and D. J. Fail, and asked the cancellation of a mortgage on certain lands, as a cloud on the complainant's title, or, in the alternative, an account of the mortgage debt, and to be let in to redeem. The material facts of the case, as shown by the averments of the bill and the exhibits attached to it, are these: On the 13th March, 1871, Burwell Boykin and Samuel F. Boykin, being "seized in fee simple as tenants in common of a certain tract of land," containing five hundred and twenty-one acres, "which they occupied and resided on as their homestead," conveyed the said lands by mortgage to Frank Boykin, jr. This mortgage is very informal. It recites, as its consideration, the payment of $917 59, cash in hand; does not describe any debt or liability, as intended to be secured; and is conditioned as follows: "*Provided* always, and these presents are upon this express condition, that if the said Burwell Boykin shall well and truly pay, or cause to be paid, to the said Frank Boykin, jr., the sum of $917 50 in gold,

[McGuire v. Van Pelt et al.]

and the interest accruing on the above specified sum, then these presents shall cease, determine, and be void; otherwise to remain in full force and effect. And the said B. Boykin and Samuel F. Boykin do hereby vest the said Frank Boykin, his heirs, or assigns, with full power and authority, upon default in the payment of *the note above described*, to sell all their interest in the said premises above described, with the appurtenances, at public sale, for cash, or on credit, giving thirty days notice," etc., "and we do authorize the said Frank Boykin to conduct the sale, and to make deed to the purchaser, and the title so made we hereby agree to defend against all persons." The respective wives of the said Burwell and Samuel F. Boykin did not join with their husbands in the execution of this mortgage. The bill alleged, that this mortgage was really given to indemnify the said Frank Boykin as accommodation indorser for the mortgagors, to enable them to obtain a loan from D. J. Fail. On the 13th March, 1872, said D. J. Fail accepted from the said Burwell and Samuel F. Boykin a new note for the same debt intended to be secured by the mortgage, thereby discharging the said Frank Boykin from liability on it; and on the 10th May, 1873, the debt being still unpaid, the said Fail, "claiming to be the assignee of the said" mortgage, sold the lands under the power of sale therein contained, and Herman Van Pelt became the purchaser at the sale. On the 19th January, 1873, the said Burwell and Samuel F. Boykin conveyed the said lands to the complainant, in trust for the benefit of their creditors, and their wives joined with them in the conveyance; but the bill does not aver, nor does the exhibit show, that this deed was acknowledged by the parties, though it was admitted to record on the 24th January, 1873. The complainant was in possession of the lands when the bill was filed.

The bill alleged, that the mortgage to Frank Boykin was null and void, being an attempted alienation of the homestead by the husbands alone, without the concurrence of their wives; that it was also void for uncertainty in the description of the debt intended to be secured, and because no day of payment or default was therein specified; "that the trust attempted to be therein declared is a personal trust given to the said Frank Boykin, and there never was any legal transfer of the same to the said D. J. Fail, and he never had any legal title to the lands therein described;" and that the said Van Pelt, for these reasons, acquired no title by his purchase at the sale under the mortgage. It further alleged, that the said mortgage, if not void for the reasons above stated, was satisfied and extinguished by the accept-

[McGuire v. Van Pelt et al.]

ance of the new note from Burwell and Samuel F. Boykin, and the consequent discharge of Frank Boykin from liability as their surety; also, that usurious interest was charged and allowed in the debt intended to be secured by the mortgage, and that Fail had received more than he was entitled to on his debt, and still retained the surplus proceeds of the sale to Van Pelt. The bill prayed, that the mortgage might be cancelled and declared void, as a cloud on the complainant's title to the lands; or, in the alternative, that the complainant might be let in to redeem, on paying to Van Pelt whatever sum might be ascertained to be due to him on an account to be stated by the register, which he was ready and willing to do, as the court might direct; and the prayer for other and further relief was added.

The defendants filed separate demurrers to the bill, assigning the same grounds of demurrer, namely : " 1. There is no equity in the bill; there is no cloud upon complainant's title ; the mortgage was valid, and followed the new note as security. 2. Usury no ground for equitable interposition. 3. Failure to pay over surplus from proceeds of sale no ground for jurisdiction of chancery. 4. It does not appear from the bill that defendant Van Pelt ever refused to complainant permission to redeem ; nor does it appear that complainant ever offered to redeem, or tendered the redemption money. 5. The complainant has full, adequate, and complete remedy at law, for all the real grievances alleged in the bill." The chancellor sustained the demurrer; and the complainant then proposed to amend his bill, by adding an averment that the conveyance to him was a general assignment, and also an averment "that the said Fail claims, by virtue of said mortgage, more than is justly and legally due on his said promissory note, and more than he is entitled to receive;" but the chancellor held that the amendment, if allowed, would not give equity to the bill, and he therefore dismissed it. The sustaining of the demurrer, and the dismissal of the bill, are now assigned as error.

W. C. WARD, for appellant.—1. The mortgage is void, as an alienation of the homestead, because the wives of the mortgagors did not join in its execution. The constitution expressly declares that it shall be void—" shall not be valid " —and being void, no subsequent act or deed can give it any validity. Contracts declared void by statute, are incapable of confirmation.—9 Ala. 198; 11 Ala. 885; 32 Ala. 288. As to estoppel by subsequent conveyance, see *Hussey v. Roquemore,* 27 Ala. 281; *Black v. Olive,* 1 Ala. 449; *McGehee v. Lindsay,* 6 Ala. 16; *Patton v. Gilmer,* 42 Ala. 548. Being

[McGuire v. Van Pelt et al.]

void, the mortgage cannot injuriously affect the rights of third parties, but its invalidity may be asserted by any person, and particularly by a trustee like the complainant. As to the invalidity of homestead alienations by the husband alone, the decisions of the Supreme Court of California are directly in point.—8 Cal. 67, 75, 347 ; 16 Cal. 156 ; also, 35 Ill. 108 ; 1 Washb. Real Property, 326, 362, 3d ed. The case is not altered, so far as the homestead is concerned, by the fact that the mortgage conveyed more land than was exempt, since the court can set apart the homestead.—10 Mich. 291 ; 2 Allen, 202 ; 6 Allen, 71. The tenancy in common existing between the mortgagors, does not prevent the homestead right from attaching. In California, where the contrary doctrine is held, the decisions place it on the ground that the statute provides no means of partition ; but that objection cannot obtain here, where ample remedy is provided. The wife of a tenant in common is entitled to dower.—*Chaney v. Chaney*, 38 Ala. 35.

2. The power of sale contained in the mortgage was a mere personal trust, and could only be exercised by Frank Boykin. The language used is peculiar, and such powers are always strictly construed.—Hilliard on Mortgages, vol. 1, pp. 128–130 ; Perry on Trusts, §§ 496–99 ; 6 Porter, 219 ; 3 Litt. 404. There was no deed from Frank Boykin, passing the legal title to Fail.—*Graham & Rogers v. Newman*, 21 Ala. 497 ; Spence's Equity, 634.

3. The complainant had a right to come into equity to remove the cloud on the title to the lands created by the mortgage and the sale under it.—*Burt v. Cassety*, 11 Ala. 734 ; *Brewer v. Br. Bank*, 24 Ala. 439 ; *Marston v. Rowe*, 39 Ala. 722 ; 5 Paige, 501 ; 30 Ala. 193 ; 11 Ala. 988 ; 7 Ala. 926.

4. No previous tender was necessary. The bill does not admit that anything was due, and a tender would have been inconsistent. The offer to pay whatever may be found due on an accounting is sufficient.—*Cain v. Gimon*, 36 Ala. 168.

5. Although usury is a personal defense, and can not be set up by strangers ; yet a trustee for the benefit of creditors, or an assignee in bankruptcy, who succeeds to all the rights of the debtor, may take advantage of it.—1 Hilliard on Mortgages, 599, 600, § 37 ; Burrill on Assignments, 438, ed. 1853 ; *Pearsall v. Kingsland*, 3 Edw. 195 ; *Dix v. Van Wyck*, 2 Hill, 522.

R. J. Boykin, *contra.*—1. If the mortgage was invalid to any extent, it was only as to the homestead right of the mortgagors.—15 Gray, 139 ; 35 Ill. 243. If such invalidity exists, the complainant cannot set it up. The homestead ex-

emption is a personal right, designed for the husband and his family,, and no other person can take advantage of it.— 15 Gray, 139. Besides, the homestead right, if any existed, did not pass to the complainant; because, although the wives joined with their husbands in executing the deed, they did not acknowledge it.—2 Allen, 202; 9 Mass. 218; 15 Gray, 139; 33 Ill. 368.

2. But there was no right of homestead exemption, because the lands were held by the mortgagors as tenants in common.—*Elias v. Verdugo,* 27 Cal. 425, and cases therein cited.

3. The mortgage attached to the debt, and passed by the assignment; and it was not extinguished by the substitution of a new note.—18 Ala. 40; 23 Ala. 797; 29 Ala. 703; 2 Wash. Real Property, 173-4. The assignee was subrogated to all the rights of the mortgagee, and might sell and convey to the purchaser under the power contained in the mortgage.— 7 Ala. 367; 19 Ala. 798; 23 Ala. 797; 21 Ala. 194; 27 Ala. 683; 2 Washb. R. P. 199. If the assignment was legal, the power of sale passed to the assignee.—Rev. Code, § 1589.

4. Usury is a personal plea, and can only be set up by the debtor.—3 Ala. 643; 8 Ala. 458; 36 Ala. 168; 45 Ala. 582.

5. The bill does not aver a tender before suit brought, and that the money is brought into court. It is, therefore, fatally defective as a bill to redeem.—*Daughdrill v. Sweeney,* 41 Ala. 310.

BRICKELL, C. J.—1. A mere general demurrer, which, under the general rules of chancery practice and pleading, directs attention to and draws in question only the equity of a bill, does not exist now in our practice, and can not be heard or sustained. The statute is express: "A demurrer to the bill must set forth the ground of demurrer specially, and otherwise must not be heard."—R. C. § 3350. The assignment, *that "there is no equity in the bill,"* is nothing more than a general demurrer; *it* is not an assignment of a special cause of demurrer. It does not point out in what respect the bill wants equity, so that, if facts exist warranting the correction of the defect, they could be introduced by amendment. It could not be heard by the chancellor, nor can it be considered here.—*Hart v. Clark,* at the present term.

2. All the causes of demurrer are loosely assigned; but we will consider such as can, by fair intendment, be considered as conforming to the statute. The first of these is, that *usury is no ground for equitable interference.* We presume it was intended to assert, that a subsequent mortgagee, or the assignee of a mortgagor, could not interpose usury as a

ground for equitable relief, or in a bill to redeem set it up in bar of a recovery of the debt and interest, as the debt may be expressed in the mortgage, and the mortgagor had promised to pay it. This ground of demurrer was well taken, to so much of the bill as claims relief because the mortgage debt is tainted with usury. In this court, usury has uniformly been treated as a defense personal to the parties to the usurious contract, or their personal representatives; and in *Cain v. Gimon*, 36 Ala. 168, it was decided that the assignee of a mortgagor, seeking redemption, could not avail himself of it.

3. The next assignment is, *that the mortgage is valid, and followed the new note as security.* This is addressed to the allegation of the bill which avers the extinguishment of the mortgage, because the form of debt was changed by the substitution of a new note payable to Fail, in lieu of the note payable to the mortgagee, described in the mortgage. The acceptance of this note, and the surrender of the former note, in the absence of any agreement to the contrary, was a discharge of the mortgagee from liability as assignor. The mortgage was not, however, a mere personal indemnity to him, extinguished by the extinguishment or discharge of his liability. It was a security for the debt, continuing as an incident to it, passing in equity with its assignment, incapable of extinguishment, except by payment, satisfaction, or a release. No change in the form or evidence of the debt impaired the security the mortgage afforded; and the new note was but a change in the evidence, showing the debt was due to the assignee, and no longer to the mortgagee.—2 Wash. Real Prop. 173; *Boyd v. Beck*, 29 Ala. 712. This ground of demurrer was well taken, to the part of the bill to which it is applicable.

4. We do not understand the bill as claiming relief, because of a failure to pay over a surplus of the proceeds of sale, or that there was a surplus, unless the fact of usury could be made available to the appellant. It is unnecessary, therefore, to notice the third assignment of demurrer. The fourth assignment proceeds on the hypothesis, that a mortgagor, or his assignee, seeking redemption in a court of equity, must aver that he has tendered to the mortgagee, or his assignee, payment of the mortgage debt, offered to redeem, and been refused, or the bill is without equity. It is true, that a bill to redeem must contain, in express terms, an offer to pay the mortgage debt, or the amount admitted to be due.—2 Dan. Ch. Prac. 1386; *Beekman v. Frost*, 18 Johns. 560. The default of the mortgagor, at law, vests the estate in the mortgagee; and equity lets him in to redeem, only on his doing equity—indemnifying the mortgagee against loss from the

[McGuire v. Van Pelt et al.]

default. The bill usually avers a tender of the mortgage debt, prior to its filing; but such averment is material, only as it affects the question of costs. It is not essential to the equity of the bill. Ordinarily, the payment of costs is one of the terms on which the mortgagor is permitted to redeem. If the mortgagee, by his refusal to accept the mortgage debt, when tendered, or by interposing groundless objections to a redemption, compels the mortgagor, or his assignee, to resort to equity, he will not be allowed, and sometimes will be compelled to pay costs.—2 Dan. Ch. Prac. 1386 (n. 4); *Slee v. Manhattan Co.*, 1 Paige, 81; *Vroom v. Ditmas*, 4 Paige, 535. The decree usually rendered fixes a future day, on which the mortgage debt must be paid, and, in default of payment, declares the bill must stand dismissed at the cost of complainant.—2 Dan. Ch. Prac. 998; 1 Smith's Ch. Prac. 546. If the decision in *Daughdrill v. Sweeny*, 41 Ala. 310, was intended to assert, as the chancellor seems to have supposed, that a tender of the mortgage debt must be made before seeking redemption in equity, it is erroneous, and not supported by authority. It may be that, under the facts in that case, it was necessary to aver a tender, with the precision necessary in a plea of tender at law, and that the sum tendered should be brought into court. The ground of equitable interference was, the fact that the complainant was entitled to restrain the mortgagee from proceeding to sell under the mortgage, because he had tendered the amount of the mortgage debt, which had been refused. But, in an ordinary bill to redeem, the tender is not necessary. The right springs out of the mortgage, and the court protects the mortgagee, by decreeing the payment of the mortgage debt, and, if he is free from blame, the payment of costs also, as the condition of redemption. If the bill discloses that the appellant was entitled to redeem, this ground of demurrer should have been overruled.

5. It is scarcely necessary to say, that if the bill shows the appellant has the rights he claims, he is without remedy at law, and the last ground of demurrer is not well taken. Redemption of mortgages pertains only to a court of equity; and the appellant, being in possession, was without legal remedy to test the validity of the mortgage. The bill does not, however, disclose that the appellant has an equity of redemption; on the contrary, it appears, if the mortgage is not void, the equity of redemption has been barred. The power of sale contained in the mortgage was not, as is suggested in the bill, a naked power—a mere personal trust in Frank Boykin, Jr. It was a power coupled with an interest, irrevocable, appendant to the land, and passing with it, by

assignment of the mortgage and debt.—4 Kent, 160 ; 2 Wash. Real Prop. 72. The statute expressly declares that a power to sell lands, contained in a mortgage, is part of the security, passing with the assignment of the debt, and may be executed by the assignee.—R. C. § 1589. Such powers are introduced into mortgages, to avoid the delay, expense, and other inconvenience, attending a foreclosure by bill in equity, and render the security more valuable and desirable. The effect of an exercise of the power—of a sale in pursuance of it—unfairness or oppression not being imputed, is that of a foreclosure, cutting off the equity of redemption, and vesting the estate in the purchaser.—2 Wash. Real Prop. 78. Of course, we speak of a sale like that disclosed by the bill, in which it is not denied there has been compliance with the essential requisites of the power. The sale by Fail to Van Pelt divested the appellant's equity of redemption; and as a bill to redeem, the bill can not be maintained.

6. The theory of the bill, in its remaining aspect, is, that the mortgage is an alienation of the homestead of the mortgagors, denounced by the constitution of 1868 as invalid, the wives of the mortgagors not having joined in its execution. The constitutional provision is in these words: "Every homestead, not exceeding eighty acres of land, and the dwelling and appurtenances thereon, to be selected by the owner thereof, and not in any town, city, or village, or, in lieu thereof, at the option of the owner, any lot in the city, town, or village, with the dwelling and appurtenances thereon, owned and occupied by any resident of this State, and not exceeding the value of two thousand dollars, shall be exempted from sale on execution, or other final process from a court, from any debt contracted after the adoption of this constitution. Such exemption, however, shall not extend to any mortgage, lawfully obtained ; but such mortgage, or other alienation of such homestead, by the owner thereof, if a married man, shall not be valid, without the voluntary signature and assent of the wife to the same."—Constitution 1868, Art. XIV, sec. 2. This, and the remaining sections of the constitution of 1868, in reference to property exempt from liability for debts, with the exception of the fourth section, and of the amount and value of the property exempt, are borrowed from the constitution of Michigan.—1 Laws Michigan Comp. 1857–72.

Similar constitutional and statutory provisions have been accepted as intending to secure to every family an absolute right to the homestead—not as a mere personal privilege which the husband may, at his election, waive, or claim, or part with ; and of it they shall not be deprived, without the

[McGuire v. Van Pelt et al.]

joint conveyance of himself and wife. The title to the homestead remains in the husband; but the power of alienation, an incident of ownership, is restrained and limited to the mode prescribed, and alienation in any other mode prohibited. The conveyance of the husband alone is as invalid and inoperative, under this construction, as would be the deed of a married woman conveying lands, not executed and acknowledged in the mode statutes may have enabled her to convey. It will not support ejectment against the husband, nor will it operate against the subsequent conveyance of husband and wife.—Smyth on Homesteads, §§ 240-242. If the mortgagors had a homestead in the premises, it passed to the appellant, by the conveyance in which the wives joined; and he is entitled to claim it, as against the appellees. It is the homestead only the appellant can claim. The mortgage was not void, except as a conveyance of the homestead. The constitution confines the homestead to eighty acres, including the dwelling and appurtenances. The husband's disability of alienation extended only to this eighty acres, to be carved from the entire tract of five hundred and twenty-one acres. As to the remainder of the tract, there was no disability of alienation. The power to alienate was limited only by the quality and quantity of the estate.—*Dye v. Mann,* 10 Mich. 291; *Wallace v. Harris,* 32 Mich. 380.

7. But, had the mortgagors a *homestead* in the premises, exempt under the constitution from liability for debts, and which they were disabled from alienating without the concurrence of their wives? The averment of the bill is, "that they were tenants in common, seized in fee simple," and, "at the executing of the mortgage, were living and residing upon the said lands as their homestead." The *homestead right* owes its existence wholly to constitutional provision, or statutory enactment. At common law, there is no analogous estate, or right, or interest. The nature, character, and extent of the right, depend wholly on the law creating and defining it.—*Thomas v. Thomas,* 45 Miss. 263. It must be accepted under the qualifications and limitations which are imposed by the law. The courts cannot abridge these, nor recognize the existence of the right, under circumstances and considerations variant from those which are specified in the constitution.—*Helfenstein v. Cave,* 3 Iowa, 290.

It is true, the statutes preceding the constitution, making exemptions for the benefit of families, were liberally construed, in furtherance of the humane and beneficent policy in which they had their origin. The largest, not the narrowest, or the usual significance of the words, if thereby the benefit of the statutes was circumscribed, was adopted. The

(24)

press and type of a practical printer were deemed *tools, or implements of trade*, though the usual acceptation of these terms may not have embraced them.—*Sallee v. Waters*, 17 Ala. 482. The term *work-horse* was not limited to a draft-horse, but extended to the horse performing, or intended to perform, the common drudgery of the family.—*Noland v. Wickham*, 9 Ala. 169; *Allman v. Gann*, 29 Ala. 240. The word *cart* was applied to a vehicle having four wheels, employed in the uses of the family, to which a cart is ordinarily appropriated.—*Favers v. Glass*, 22 Ala. 621. This liberality of construction did not involve the power of extending the words of the statute beyond a just and fair interpretation—it did not authorize the courts to draw within the operation of the statute persons or things to which the words could not be extended, nor to dispense with the conditions on which the right of exemption could be claimed. The exemption was to the *head of a family:* uniformly, a relation of legal dependence on the debtor, by persons resident within the State, was held indispensable. The resident of another State, accompanied by a son of full age, here pursuing a mechanical occupation, having at his domicile a family legally dependent on him (and it may have been for the better sustenance of that family), could not claim the statutory exemption.—*Allen v. Manasse*, 4 Ala. 554. The horse of a resident of Mississippi, protected there by statute from levy and sale, temporarily found here, was not protected.—*Boylin v. Edwards*, 21 Ala. 261. A married woman, having no children, residing here, her husband residing in another State, could not claim the protection of her separate estate under the statute.—*Keiffer v. Barney*, 31 Ala. 192. Actual occupancy of the premises claimed, as a *homestead*, was necessary, though the statute, in describing the premises exempt, employed only the word *homestead.*—*Kaster v. McWilliams*, 41 Ala. 302. The exemption was lost, if not claimed before a sale, whether the property was real or personal.—*Gresham v. Walker*, 10 Ala. 390; *Bell v. Davis*, 42 Ala. 460.

We do not doubt, that the constitutional provision, so far as it admits of construction, must receive a similar construction—a liberal, as distinguished from a strict, or narrow construction, preserving and advancing the policy in which it originates. So far as the question under consideration is concerned, the constitution, in its language, is plain and clear, and the sense and meaning of its terms distinct and perfect. The duty devolving on us is that of interpreting, not of construing these terms. The constitution does not operate on lands, or an estate in lands, merely. There may be an estate in fee simple, or for life, or for years, held in

severalty or in common—in a large, or in a small quantity of
land—of great, or of insignificant value—residing in one
who has not a residence within the State, and it would not
be affected by the constitutional provision creating and defin-
ing a *homestead right*.   Or, the estate may reside in a citizen
of the State, having here a permanent abode, a family de-
pendent on him, who may, by his improvidence, be reduced
to destitution; and if the lands are not occupied by him as
a homestead—if they are occupied for a different purpose, as
for commercial, manufacturing, mechanical, or agricultural
pursuits; or if held that the means of maintaining the family
may be derived from the rents and profits—the constitution
does not operate on it.—*McConeghy v. Baxter*, MSS.   An
analysis of the constitutional provision shows, that it is the
*homestead* which is *owned and occupied*, and which the owner
has the unqualified right of *selecting*—of separating from
other lands, and devoting to *use and occupancy* as a home—
which is protected from liability for debts, and the alienation
of which is restrained, if the owner be a married man.   Prof.
Washburn says: "A homestead, in law, means a home-place,
or place of the home, and is designed as a shelter of the
homestead roof, and not as a mere investment in real estate,
or the rents and profits derived therefrom."—1 Wash. Real
Prop. 326.   The power of selection, and devotion to use and
occupancy as a homestead, separating and distinguishing it
from a mere estate or interest in lands, is as essential to the
right, as is the personal *status* of residence within the State,
or of actual occupancy, if that *status* exists.

Are tenants in common within the words of the constitu-
tion, fairly and justly interpreted?   As long as they hold in
common, have they, or can they have *severally*, the occupancy,
or the power of *selecting*, and devoting to use and occupancy
as a *homestead*, any specific part of the common estate?
Unity of possession is the essential element, and one of the
distinguishing characteristics of this species of tenancy.
Whether held by several distinct titles, or by the same deed,
devise, or descent, the tenancy exists, so long as this unity
of possession continues, "so that each tenant knows not his
own severalty."—4 Kent, 404; *Thompson v. Mawhinney*, 17
Ala. 362.   The possession of the one tenant is the possession
of the other, and the taking of the whole profits by the one
is not an ouster of his companions.—4 Kent, 407; *Johnson v.
Toulmin*, 18 Ala. 50; *Williams v. Avery*, 38 Ala. 115.   One
tenant in common can not convey a distinct portion of the
estate by metes and bounds.   Such a conveyance will, in
favor of the grantee, operate against the grantor by way of
estoppel; but, as against the co-tenants, it is inoperative and

void.—4 Kent, 404. In this case, if a homestead could be *selected* from the premises, which of the tenants would have the right of the *selection?* Which of them would take the *dwelling and appurtenances?* Can a homestead be allotted to each, leaving them in joint or common occupancy of the premises? How much of the contiguous land can each select? If each selects eighty acres, the exemption defined by the constitution is increased, and the quantity of land on which limitations of alienation rest is doubled. If there is only one homestead selected by the two tenants, and one tract of eighty acres, the constitutional *homestead* is dwarfed to one-half. It is a homestead as an entirety, which is created, defined, and contemplated by the constitution—not an undivided interest in a homestead, uncertain in the duration of occupancy, because of the character of the ownership and possession. Suppose there are two *dwellings and appurtenances* on the tract, and these should be severally selected; could the interest of the one tenant, in the homestead of the other, be subjected to sale for the payment of debts? Would it pass by an alienation in which the wife did not join? These questions must be affirmatively answered; and yet it is apparent that freedom from liability for the payment of debts, and restrained alienation, are of the essence of the *homestead right* the constitution contemplates. If, under judicial process, the undivided interest of the one tenant is sold, or if it is aliened, the alienee immediately becomes a tenant in common, entitled to enter and to share in the rents and profits. Suppose he claims partition, and the dwelling and appurtenances are assigned to him, while the share of the tenant selecting them as a homestead is located on lands not capable of use and occupancy as a homestead; the family is deprived of a *home,* without the assent of the wife.

I must not be understood as intimating that an unqualified title in fee simple is necessary to support the homestead right. The right will attach to a less freehold estate, or to an estate for years, or to any defined interest, to which the absolute power of selecting and appropriating the premises, or a specific part of them, as a homestead, is an incident. But, when such incident can not be imputed to the ownership—when the possession and occupancy is not several and exclusive, so that it will separate and distinguish the lands which are exempt from liability for debts, and the alienation of which is restrained, from other lands not exempt, and the alienation of which is unrestrained—the right can not attach. *West v. Ward,* 26 Wisc. 579. The *selection* of a specific part of the lands as a homestead, by the one tenant in common, would be as inoperative as his conveyance of such part. It

would not secure to him, or to his family, a permanent home—a dwelling place—protected from the entry and possession of all the world, while his estate or interest endured, and his or their occupancy continued.

It may be said, the *selection* can prevail against all the world but the co-tenant, and, if he does not complain, others have no cause to complain. The right would then depend for its continuance and preservation, not on the constitution, but on the sufferance of the co-tenant. The right was incorporated into the constitution, to render it fixed, permanent, absolute, free from legislative invasion, and as inviolable as the rights of property which have always been recognized and protected by constitutional guaranty. It can not be made to depend on the sufferance or volition of any other person than him in whom it resides.

Creditors may be placed in the same condition, if a tenant in common is allowed to retain a homestead, that they would be if his title was absolute and unconditional. It is not the right of creditors which is alone to be considered. Exemption from liability for debts is but one of the objects of the constitution. The owner may be free from debt, and the *homestead right* exist, incapable of destruction by alienation in which the wife does not join. On his death, the right of the widow, and the right of the minor children, would exist, and must be enforced, though not a debt is chargeable on his estate, real or personal. The framers of the constitution may well have intended to attach the right only to an estate or interest in lands capable of supporting it, so long as that estate or interest endured, if there was not alienation in the mode prescribed, and to withhold it from another estate or interest, because of its character, not capable of supporting it, when a right residing in another was asserted. No just interpretation of the constitution, in my judgment, authorizes the extension of the right to an estate held in common.

Upon this, as on many other questions arising under homestead and exemption laws, there is great contrariety of judicial decision. The following authorities support my conclusion.—*Amphlett v. Hibbard,* 29 Mich. 298; *West v. Ward,* 26 Wisc. 579; *Thurston v. Maddocks,* 6 Allen, 427; *Wolf v. Fleishacker,* 5 Cal. 244; *Giblin v. Jordan,* 6 Cal. 416; *Elias v. Verdugo,* 29 Cal. 418. Unless it can be asserted that the constitution operates on a mere estate or interest in lands, and not on a *homestead only,* this conclusion seems to me inevitable.

The mortgage now assailed, because the wives of the mortgagors did not join in its execution, conveys a tract of land

containing five hundred and twenty-one acres. The want of the concurrence of the wives of the mortgagors would not, as we have said, render it invalid, except so far as it operated a conveyance of the *homestead*. How much land can be withdrawn from the operation of the mortgage, if the homestead right can be attached to the estate of the mortgagors? Can one hundred and sixty acres, allowing a homestead to each mortgagor, or only eighty acres, the extent of the homestead, inalienable under the constitution, without the assent of the wife? If the appellant, deducing title under a subsequent conveyance, can claim, as he may if the homestead exists, that his conveyance passes the *homestead* on which the mortgage does not operate, the *homestead* of which tenant does not pass by the mortgage, and the homestead of which passes to the appellant? Is the mortgage inoperative as to the *homestead* of the other, and the appellant's conveyance likewise inoperative? If such *homestead* exists, how is the co-tenant deprived of his common estate in it?

The constitution clearly defines the quantity and value of the *homestead right*, and selection and occupancy by the owner as the facts which distinguish the lands to which it attaches from all other lands which the person on whom the right is conferred may own. If it had been intended the right should attach to lands held in common, the tenure of which forbids an exclusive occupancy by one of the tenants, and with which the right of selection is inconsistent, it seems to me manifest a mode of selection and of partition would have been prescribed. No hardship or injustice can result to the tenants in common. If they desire the homestead right should attach to the lands held in common, partition can be had whenever they claim it. When it is had, the land allotted to each in severalty, becomes subject to the right of selection—of devotion to use and occupancy as a homestead, and separable and distinguishable from all other lands which he may own. The *use and occupancy* gives notice to all the world of the land exempt, the alienation of which is restrained. When the *use and occupancy* is joint, or in common with others, such notice is not given.

A majority of the court do not concur with me in these views. They hold that the *homestead right* does attach to the estate of tenants in common, and are supported in their conclusion by numerous authorities. I have no disposition to extend this opinion by a review of such authorities, or by a discussion of the reasons controlling them. I regret the disagreement between us. We have labored patiently to reach harmonious conclusions on the various questions arising under this article of the constitution; and if my convic-

[McGuire v. Van Pelt et al.]

tions were less strong, I would yield them to the judgment of my brothers.

MANNING, J.—We all concur in the conclusions announced by the Chief-Justice, on the several questions presented for our decision in this cause, except one—the question whether the homestead right under the constitution attaches to property held by two or more as tenants in common. It seems to me that it does. The constitutional provision is as follows : " Every homestead, not exceeding eighty acres of land, and the dwelling and appurtenances thereon, to be selected by the owner thereof, and not in any town, city, or village, or, in lieu thereof, at the option of the owner, any lot in the city, town or village, with the dwelling and appurtenances thereon, owned and occupied by any resident of this State, and not exceeding the value of two thousand dollars, shall be exempted from sale on execution, or any other final process from a court, for any debt contracted after the adoption of this constitution. Such exemption, however, shall not extend to any mortgage lawfully obtained, but such mortgage, or other alienation of such homestead, by the owner thereof, if a married man, shall not be valid without the voluntary signature and assent of the wife to the same."

The question is one between the occupant of a homestead and his creditor. There is no doubt that, to support the homestead-right, it is not necessary that the estate of the claimant of a homestead should be a fee simple, or that it should be a legal estate. Property held by a lessee under a lease—a merely temporary interest—or by a mortgagor, who has only an equity of redemption, no matter how heavily incumbered the property may be, or land in which the occupant has some other inferior or defeasible estate, provided it extends to and embiaces the whole parcel or tract, is sufficiently owned by him, within the meaning of the law, to entitle him to hold his homestead therein against creditors. Thus far there is no difference of opinion among us. Even a tenancy at will, if so precarious a possession were subject to be sold under execution, would be a sufficient interest in land, to entitle the tenants dwelling on it to the protection of the homestead laws.—See authorities referred to in *Weber v. Short*, at this term. Is it not illogical, then, to deny such protection to the homestead of one who has so large and permanent an estate in the property composing it, as to be the owner, perhaps in fee, of an undivided one-third, one-half, three-fourths, or, peradventure, nine-tenths, and who lawfully occupies the whole, with the consent or acquiescence of, or jointly with his co-owner?

[McGuire v. Van Pelt et al.]

Considering that the law under examination was designed to establish an important policy, the object of which was to prevent families from being made unhoused wanderers, and that to this end it is enacted that the homestead which a man owns and occupies shall be exempt from sale for the payment of debts contracted after that time; what canon of interpretation requires us to decide that this means, that the homestead shall be exempt provided the occupant be sole owner of the property, or has an imperfect or defeasible estate, or contingent or temporary interest in the whole, but not if he owns only an undivided half, or some other portion, though lawfully in possession of the whole? Such a ruling would deny the benefit of this constitutional provision to those who presumably most need it, and are of the class for whose protection it is understood to have been ordained. It does not appear to me that the words of the law are so at variance with its manifest object, as to constrain us to hold that a creditor may have his debtor's family turned out from the shelter of their dwelling-house and its appurtenances, if the debtor owns only an undivided moiety, or a tenth part thereof, and the undivided residue belongs to some one else, but shall not have them turned out, if he owns the whole as an entirety. Why should they not be protected in so much as he does own, though this be less than the whole? The home of one who has only such a partial estate in it is, except as against another co-owner, as much his castle, as if it stood on ground which had descended to him individually, through a long line of ancestors; and its refuge is no less important to those for whom it was provided.

It is objected, though, that a tenant in common of property can not claim any part of it as his in severalty, and it can not be known what particular portion would, upon partition, be assigned to him; and hence, it is inferred, he has not such an estate in the property as entitles him to a homestead on it. But, if he be in possession of the homestead, claiming it, and having such part ownership, and it does not exceed the limits prescribed by the constitution, what has his creditor to do with a controversy, that may or may not arise, between him and his co-tenants? If the homestead be not allowed to the debtor upon partition, the creditor will not be thereby injured; and if it be assigned to the debtor, he obtains no more than the constitution allows him. What difficulties may arise between him and others in the future, ought not, it appears to me, to be brought up to interfere with a present right of the debtor and his family to remain in their home undisturbed by his creditors,—See *Williams v. Wethered*, 37

Texas, 132; *Smith v. Deschaumes*, Ib. 429; *McClary v. Bixby*, 36 Verm. 257; *Greenwood v. Maddox*, 27 Ark. 648; *Thorn v. Thorn*, 14 Iowa, 49. Indeed, if the whole property of which two or more are tenants in common plainly does not exceed what the constitution allows for a homestead, and there is no room for any selection to be made, I do not understand by what process of reasoning a creditor of one of them, who is occupying it as his place of habitation, could undertake to maintain, or venture before a court to contend for, the right to sell out his debtor's interest in it, and expel him therefrom; and if it be conceded that, in such a case, the right to do so would not exist, then the argument erected upon the words "owner" and "owned" in the constitution, falls to the ground; and it becomes apparent that one who is "owner" of, or *owns* less than the entirety, is brought within a legitimate interpretation of the words of the law, as well as within its obvious reason and policy.

There is no inconsistency, as apprehended, between these views and the conclusion we reached in *Giovanni v. The First National Bank*, decided a few days ago, respecting personal property constituting the stock in trade of a mercantile copartnership. We therein held, that the individual members of a firm were not entitled, each or either, to select $1,000 worth of the partnership goods, after they had been seized to satisfy a partnership debt, during the continuance of the copartnership, and have them exempt from sale by virtue of section 1, of article XIV of the constitution of 1868; which section protects from sale, under process for debt, "personal property of any resident of this State, to the value of one thousand dollars, to be selected by the owner." The two cases are quite unlike. In the first place, the homestead, the most conspicuous part of any one's property—the place of his abode—is specified and designated in the law, and thus known of all men, as exempt from sale for payment of his debts. The only selection to be made is of a limited quantity of land, contiguous, or adjacent to that on which the dwelling house stands, to go with it as a part of the exempt homestead. But the personal property to be protected from sale under section 1, *supra*, is not specified. What it shall be is wholly undetermined. From which it results, that there can be, and is, no restriction in favor of wife or any body else, on the power of the owner to dispose of his personal property as he may choose. And, in the second place, when he has chosen to put goods or moneys into a mercantile partnership business, he ceases to be the owner of them. All the articles composing the stock, collectively and singly, belong to the firm—may be sold as its

[McGuire v. Van Pelt et al.]

property, by *either partner*, or be subjected to the contracts or debts made *by either* on behalf of the firm; and on the death of one of its members, are under the control, and can be disposed of only by the surviving partner or partners, who wind up its affairs. Neither partner can, at any time during the continuance of the partnership, separate from its stock any part of it as his—not even that which he himself put in; for that is no more his, than are the things which his partner contributed. He is entitled to have only his share of the profits, and of the residue of goods remaining, after the payment of all partnership debts, on the discontinuance of business. In fine, he can not lawfully take from the stock of the firm, or dispose of any thing belonging thereto, during the continuance of the partnership, as his own, or for his individual use, *except as a purchaser, chargeable with the price therefor due to the firm; and he can not purchase from it, nor can it sell or give to him, or to any body else, articles that have been taken by the sheriff to satisfy process against the firm for a debt it owes.* But a tenant in common has no ownership of, or power to dispose of or charge the interest of his co-tenant in real estate, either during the life, or upon the death of the latter. Each owns individually a definite though undivided portion of the whole, which he can sell, mortgage, or devise without hindrance; and which does not become subject to any debts or contracts created by his co-owner.

But, to return to the case in hand: The land in controversy considerably exceeds the quantity exempted from sale for debt by the constitution. Whatever difficulties may spring up to embarrass the administration of its provisions in cases with that feature, which may hereafter arise, there is none in the present at all insuperable. The principal defendant acquired his title through a mortgage of both of the tenants in common, who together owned the entire property, and mortgaged it to a creditor. At the time of doing this, both of them occupied, with their wives and families, the one dwelling-house and its appurtenances on the premises; and neither wife signed the mortgage deed. But, by a subsequent instrument executed by the same tenants in common and their wives, the same premises, including the dwelling-house, were conveyed in trust to another party, the complainant below and appellant here, in this cause. Now, we have already decided, in respect to a deed of a large tract of land made by the sole owner of it, but not signed by his wife, that though valid as to the rest of the premises, it is void as to the homestead property, and also that the husband and wife might afterwards sell or mortgage the homestead to another person. This is a valuable and important

right, that may be used as a means of raising money, or procuring another home. If, then, these rulings be extended, as I think they should be, to similar instruments made of property held by tenants in common, with a homestead on it, and therefore to those made of the property in controversy in this cause, how stands the case? The first mortgage embraced all the land except what was exempt for the homestead; and this passed to appellant under the deed to him, made by the two tenants (who together owned it in its entirety), with the concurrence of their wives. To appellant, therefore, is conveyed the complete title that was in both tenants in common, to the homestead property; and he holds it as sole owner.

No difficulty can arise, as suggested, upon the question whether two homesteads are to be taken out of the tract, or only one. We hold, under the description of the homestead in the constitution, as a tract—"not exceeding eighty acres of land, and the dwelling and appurtenances *thereon* * * * owned and occupied," &c., that without the dwelling-house there cannot be any such homestead; and since there is but one dwelling-house on this land, though the families of both of the tenants in common lived in it, there can be only one homestead. If, therefore, it happened that each of them had only one-half of what might be embraced within the constitutional limit of its extent and value, it is the consequence of his situation. Neither of them was any worse off, nor was his case in that particular legally any more questionable, than if, like many others, he had owned in entirety a homestead of inconsiderable value, or one so incumbered as to be worth very little.

The property having been sold under the first mortgage, professing to convey it all, defendants denied that complainant had any right in it. The question of title thereby raised depends wholly upon the construction of a constitutional provision, and of its effect upon the deeds under which the parties respectively claim, and not upon any disputed fact; and the property to which it relates is in part an unascertained parcel, the boundaries of which are not prescribed, of a larger tract of land. That the homestead property is not all ascertained, is not caused by any fault of complainant. The terms in which the constitution grants the homestead right, leave the property to which it shall extend, beyond the dwelling-house and its appurtenances, undefined, uncertain, and to be set off in severalty. And when the mortgage and trust deeds of the tenants in common were respectively made, they probably expected to pay the debts secured thereby, without a sale of the property, or at least

of all of it; for which reason, or some other, they failed to designate the land they were authorized to select, to go with the dwelling house, until their right to the homestead and interest in it had passed to another. And when the trust deed was made, the parties interested in it could not know that all except the homestead property would be required to pay the first mortgage debt; and that it was, therefore, important to have the homestead set off in severalty.

In conclusion, there was, in my opinion, a homestead right in the tenants in common. It was granted and intended to be secured by the constitution; and having been conveyed by the trust deed to appellant, it became vested in him. For every right their ought to be a remedy. That there might be, the State has established its various judicial tribunals. And if, in the course of asserting an expressly granted constitutional right, questions must arise which a common-law court is not competent to determine, and other instrumentalities for their solution are not provided by law, the aid of a court of equity may be invoked for that purpose, and to uphold the right. The present case is a proper one for its interposition. Complainant and defendants were at variance in regard to their respective interests. According to the views hereinbefore expressed, the former, when this suit was brought, was entitled to the homestead on the premises in controversy, to the extent of its constitutional limits. But it was in fact an unascertained parcel of a single, entire, larger tract, in which defendants also had and claimed an interest; and the location and boundaries which would enable each party to hold in severalty, were not defined. Complainant, besides, is a trustee, who is answerable over to his *cestuis que trust* for the right performance of his duties; and he has shown a case which entitles him to the aid of a court of equity.

If the allegations of the bill in respect to the execution of the mortgage and trust deed, and the sale under the former, shall be admitted by defendants, or proved by the evidence to be taken, and nothing be shown that would impair their legal effect, then the chancellor ought to decree the mortgage of 1871 void as to the homestead property, and that this passed to complainant by the trust deed made to him; and ought further, unless the parties come to an agreement on the subject, to appoint commissioners, and cause to be set off by metes and bounds the land embracing the dwelling-house and appurtenances, and most advantageous thereto, not exceeding in area eighty acres, or in value two thousand dollars, as the homestead property, to be holden in severalty by

VOL. LV.

complainant, subject to the trusts in said deed, and ought to cause him to be put in possession thereof.

A majority of the court hold that the chancellor erred in sustaining the demurrer to the bill; and that his decree dismissing it must be reversed, and the cause be remanded for further proceedings in conformity with this opinion.

STONE, J.—I have had much difficulty in solving the question, whether homestead can be claimed in lands of which the occupant is only a tenant in common with others. In personal property, held and owned in partnership, we have decided that the several partners can not claim exemption from sale on execution, under section 1, article XIV, of the constitution of 1868. The language securing the exemption under that section is so entirely like the language which protects the homestead for the use of the family under section 2 of same article, that I have found it difficult to draw a distinction between them. The argument of my brother MANNING has very nearly, if not entirely, relieved me of that trouble. Each partner has an interest in, and lien upon the entire partnership property, for certain purposes. As between themselves, the partnership effects stand pledged for the payment of the debts of the firm; and it is only after all the liabilities are cancelled, and a balance left, that the several partners can claim a separate, or separable interest. Till then, the assets are not the subject of separate ownership. I speak, of course, of partnership effects, while the relation of partnership continues. When it is dissolved, and the ownership becomes several, a different rule prevails. Between tenants in common, the relation is different. Each owns a separable interest, and neither, by mere force of the relation, has any lien on the interest of the other. One may alien or incumber his interest, without affecting or embarrassing the equal rights of the other. The exemption of the interest of one from the payment of debts does not impair, or take away from the other, any right he has in the property, or hinder the creditors of such other in the enforcement of any liens or rights they may have to go against such interest.

I admit that, in allotting the homestead in lands held in common, some difficulties will be encountered. These difficulties will be enhanced, when, as in the present case, alienations have been made, which require a selection and carving out of the homestead, after the owner, in whose favor it is reserved, has ceased to have any interest, and, it is to be presumed, will not care to make the selection, if the right remain with him. Other cases might arise, in which it is not

unreasonable to suppose the owner may fail, refuse, or be mentally incapable of selecting the homestead. Would the homestead, thereby, become lost to the family? Suppose the owner dies before it becomes necessary to make a selection. The constitution makes no provision for the selection by the widow, or by any one else, in such case. Are all the beneficial provisions of sections 3 and 5 of article XIV of the constitution to be lost in such case? I think not. The varied and moulding powers of the Chancery Court would evidently come to the aid of such parties, and provide a remedy for the enforcement of this constitutional right.

The exemptions provided by the constitution are not intended to confer property, or to increase the ownership therein. They only protect and leave the owner in the undisturbed possession of such interest as he owns. Hence, they do not convert a tenancy in common into a tenancy in entirety. They do not relieve estates of incumbrances, or make absolute estates out of partial ones. Their theory is, that they put a lock on the machinery of the law, and place exempted property without the power and influence of its process. The area of the exemption is not enlarged, to compensate for defects of title, or fractions of ownership. Such interest, and such only, as the owner has in the given quantity exempted, is reserved for the use of the family; and the owner and his family are permitted to retain and occupy it as it is, and only as it is.

I approve the arguments of my brother MANNING, on this question, and concur in his conclusions.

I incline to the opinion, that when the tract of land, on which a resident of this State resides—*owned and occupied* by him—exceeds the number of acres exempted, then the owner may select his homestead any where in the tract, although such selection may not embrace the residence; and that the phrase, " the dwelling and appurtenances thereon," simply means, that the homestead selected carries with it whatever dwelling and appurtenances may be on it. My brothers, however, think and hold that the homestead must be so selected as to embrace the dwelling and appurtenances in which the owner has his domicile. I do not dissent from their decision, but incline to the opposite opinion.